1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIE F. LYLE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C10-1882-RSL-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Marie F. Lyle appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 44-year-old woman with a high school education. Administrative Record ("AR") at 40. Her past work experience

REPORT AND RECOMMENDATION - 1

includes employment as a fast-food cashier, dishwasher, and fry cook. AR at 59. Plaintiff was last gainfully employed in November 2005. AR at 40.

On June 21, 2007, plaintiff filed applications for DIB and SSI payments, alleging an onset date of October 12, 2003. AR at 132-34, 135-36. At the hearing, however, plaintiff amended her alleged onset date to December 14, 2005. AR at 38, 74.[1] Plaintiff asserts that she is disabled due to degenerative joint disease (osteoarthritis) in her right hip. AR at 148.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 81-87, 90-93. Plaintiff requested a hearing, which took place on August 4, 2009. AR at 34-64. On September 29, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 74-79. After reviewing additional evidence, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 1-4. On November 18, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] In his decision, the ALJ incorrectly states that plaintiff's alleged onset date was November 4, 2005. AR at 74.

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Lyle bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On September 29, 2009, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since November 4, 2005, the alleged onset date.[3]

3. The claimant has the following severe impairment: right hip osteoarthritis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 5 pounds frequently and 10 pounds occasionally with ability to sit, stand, and walk 6 of 8 hours, and unlimited ability to push/pull and perform gross and fine manipulations, except is not able to push with the right lower extremity. She also retains the ability to occasionally climb stairs, but not ladders, ropes, or scaffolds, and she cannot run. She is, however, able to occasionally bend, crouch, crawl, balance, and twist, but unable to stoop or squat. The claimant has no mental impairment or related limitations.

6. The claimant is unable to perform any past relevant work.

---

[3] As noted above, plaintiff actually amended her alleged onset date at the hearing to December 14, 2005. AR at 74.

REPORT AND RECOMMENDATION - 5

| | | |
|---|---|---|
| 1 | 7. | The claimant was born on XXXXX, 1965 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.[4] |
| 2 | | |
| 3 | 8. | The claimant has at least a high school education and is able to communicate in English. |
| 4 | | |
| 5 | 9. | Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. |
| 6 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| 7 | | |
| 8 | | |
| 9 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2005 through the date of this decision. |

AR at 74-79.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by concluding that plaintiff did not have an impairment that meets or medically equals the listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, § 1.02?

2. Did the ALJ err in his evaluation of the opinion of treating physician Mark Beard, M.D.?

3. Did the ALJ err in making an adverse credibility finding?

Dkt. 11 at 1-2; Dkt. 12 at 4.

## VII. DISCUSSION

A. <u>The ALJ Erred In Determining That Plaintiff's Impairments Did Not Meet or Equal A Listing</u>

Plaintiff argues that the ALJ's finding that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1, was insufficient for several reasons. First, plaintiff asserts

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

that it is unclear that any doctor in the record considered the issue of medical equivalence, and thus the ALJ's failure to call a medical expert to testify was harmful error. Dkt. 11 at 8-9. Second, plaintiff contends that there is significant medical evidence in the record demonstrating that plaintiff meets or equals listing 1.02, further demonstrating that the ALJ failed to make a sufficient step three finding. By contrast, the Commissioner argues that the ALJ properly determined that plaintiff did not meet or equal listing 1.02 based on significant medical evidence in the record demonstrating that plaintiff could ambulate effectively. Dkt. 12 at 10-11.

        1.    *Requirements of Listing 1.02 and Standard for Determining Medical Equivalence*

Step three of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe specific impairments in each of the body's major systems that are considered "severe enough to prevent a person from doing most gainful activity." 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step three must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Cauffman v. Astrue*, 2010 WL 5464815, *4 (W.D. Wash. 2010).

To be found disabled at step three, plaintiff must prove that she meets or equals each of the characteristics of a listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (holding that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or

otherwise, as to how his impairments combined to equal a listing impairment). A claimant who meets or equals a listing is presumed disabled at step three without further inquiry. 20 C.F.R. § 416.920(a)(4)(iii). Whether a plaintiff's impairment constitutes or equals a listing is an issue reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, *2 (1996). Nevertheless, the determination must be based on substantial evidence.

Listing 1.02 is characterized by (1) "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint," and (2) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint," with (3) "involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in (4) an inability to ambulate effectively, as defined in [20 C.F.R. Pt. 404, Subpt. P, App. 1, §] 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. The "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. at §1.00B2b.

2. *The ALJ Erred at Step Three of the Sequential Evaluation Process*

The ALJ determined that plaintiff's impairment did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 74-75. Specifically, the ALJ concluded that plaintiff's "upper extremity impairments do not meet any listing," and that she did not have "a major dysfunction of the joint characterized by gross anatomical deformity as outlined in listing 1.02." *Id*. The ALJ only discusses plaintiff's ability to ambulate later in the decision in the section pertaining to the ALJ's RFC assessment. AR at 76.

Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

1990) ("[I]n determining whether a claimant equals a listing under step three…the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case. *See Lewis*, 236 F.3d at 514 (plaintiff must present plausible theory as to how an impairment or combination of impairments equals a listed impairment).

Here, the ALJ summarily concluded that plaintiff's "upper extremity impairments" do not meet listing 1.02. However, there is no allegation of an upper extremity impairment in this case. The ALJ wholly failed to discuss the requirements of listing 1.02, or make any specific findings associated with his conclusion that plaintiff's right hip osteoarthritis did not meet listing 1.02. AR at 76-77.

There appears to be ample evidence in the record demonstrating that plaintiff's right hip osteoarthritis meets the first three requirements of listing 1.02. Beginning in March 2004, plaintiff's right hip osteoarthritis due to avascular necrosis is documented in nearly all of the medical reports in the record. AR at 201. A medical imaging report from January 2006 indicates that plaintiff has an "end stage right hip joint with severe joint space narrowing and subchondral sclerosis." AR at 249, 317. Additionally, multiple medical reports demonstrate that plaintiff suffered chronic pain, stiffness, and limited motion in her hip due to her right hip osteoarthritis.[5]

With respect to the fourth requirement, however, that there is conflicting evidence regarding plaintiff's ability to ambulate effectively. Treatment notes from June 2005, March 2005, October 2005, and December 2005 reflect that plaintiff could ambulate while taking her

---

[5] AR at 193, 201, 215, 230-32, 263, 272, 286, 294, 300, 306, 308, 310, 314, 326, 335, 348, 358, 365, 381.

prescribed pain medication "with a little bit of irregular gait." AR at 191, 314-15, 187, 212. However, treatment notes from March 2006 and July 2006 indicated that plaintiff's condition had worsened, as she experienced marked interference with her ability to walk, and could not stand or walk more than two hours in an eight-hour workday. AR at 216, 232. An August 2006 surgery consultation note indicated that plaintiff's "walking tolerance was less than one block," although she did not "use any kind of walking support" and used "the banister to go up stairs." AR at 293. Dr. Beard's July 2009 letter indicated that plaintiff was "unable to walk more than 20-30 feet." AR at 370. Although there is no evidence in the record demonstrating plaintiff's ability to ambulate between 2006 and 2009, medical reports from January 2007 and April 2009 reflect little to no change in plaintiff's ability to maintain her daily activities while on her medication. AR at 253-70, 271-321, 322-31, 343, 358.

In light of the conflicting evidence in the record concerning plaintiff's ability to ambulate effectively due to her right hip osteoarthritis, the Court finds that the ALJ's failure to make comprehensive and analytical findings specific to listing 1.02 is reversible error. *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam) ("Secretary must make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently."); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) ("It is incumbent upon the examiner to make specific findings the court may not speculate as to his findings," and such findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.").

Accordingly, this case must be remanded for further administrative proceedings. On remand, the ALJ must properly consider all of the medical evidence and reevaluate whether plaintiff's right hip osteoarthritis meets or equals a listing. The ALJ shall also adequately explain his conclusion.

B.  The ALJ's Treatment of Dr. Beard's Opinions

Plaintiff argues that the ALJ erred by failing to consider two opinions of treating physician Dr. Mark Beard, M.D., which indicate that plaintiff's impairments force her to alternate between sitting and standing: (1) a March 2006 physical examination indicating that plaintiff has "marked" limitations in her ability to sit, stand, walk and lift; and (2) a March 2007 letter indicating that plaintiff's arthritis limited her ability to stand for more than 15 minutes, walk longer distances and sit for more than 15 minutes at a time. Dkt. 11 at 11; AR at 216, 236. Because the vocational expert testified that there were no unskilled, sedentary jobs that could be performed if plaintiff needed to alternate between sitting and standing, plaintiff asserts that she is disabled. AR at 61.

Additionally, plaintiff contends that the ALJ improperly rejected Dr. Beard's July 2009 letter indicating that plaintiff was unable to walk more than 20 to 30 feet, stand more than 10 minutes or sit more than 15 minutes. Dkt. 11 at 14; AR at 370. Specifically, plaintiff argues that the following reasons the ALJ allegedly provided for rejecting Dr. Beard's July 2009 letter were not specific or legitimate: (1) Dr. Beard never found that sitting caused plaintiff pain; (2) plaintiff was stable on her prescribed medications; (3) the record consistently shows very few instances of breakthrough pain while plaintiff was being treated with medication; (4) plaintiff was not a candidate for surgery; and (5) the state agency single decision maker determined that plaintiff's ability to sit was unlimited. Dkt. 11 at 14-16.

The Commissioner argues that the ALJ's failure to address Dr. Beard's March 2006 and March 2007 opinions was harmless because Dr. Beard's July 2009 opinion regarding plaintiff's ability to sit was consistent with both of those opinions. Dkt. 12 at 8. Additionally, the Commissioner contends that substantial evidence supports the ALJ's conclusion that Dr. Beard's July 2009 opinion was undermined by treatment notes indicating that plaintiff's condition was stable and she was able to maintain her daily activities. Dkt. 12 at 9 (citing AR at 78, 306, 310, 314-15, 326, 335, 343, 358.). The Commissioner also cites to Dr. Beard's

treatment note indicating that plaintiff was looking for work other than manual labor in support of the ALJ's decision to reject Dr. Beard's July 2009 opinion of disabling sitting limitations. AR at 310. Finally, the Commissioner asserts that the single decision maker did not conclude that plaintiff had an unrestricted ability to sit, but simply made note of an examining physician's opinion to that effect. Dkt. 12 at 9.

1. *Standard for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. *The ALJ Erred in Evaluating Dr. Beard's Opinions*

As mentioned above, Dr. Beard's March 2006 physical examination indicated that plaintiff had "marked" or very significant limitations in her ability to sit, stand, walk, or lift. AR at 217. Dr. Beard did not include any additional findings or descriptions of plaintiff's limitations on the form. *Id*. Additionally, Dr. Beard's March 2007 letter to DSHS, temporarily excusing plaintiff from her participation in the Work First program, indicated that plaintiff could not sit for more than 15 minutes at a time, and could not stand for more than 15 minutes. AR at 236.

The ALJ made no mention of these opinions in his decision, and this constitutes reversible error. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007) (holding that an ALJ commits reversible error "when the ALJ ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed."); *Embrey*, 849 F.2d at 421 (holding that a treating physician's opinions are entitled to special weight, and thus the ALJ must provide specific and legitimate reasons based on substantial evidence to reject them). On remand, the ALJ must explicitly consider and discuss Dr. Beard's

REPORT AND RECOMMENDATION - 13

March 2006 examination and March 2007 letter, in conjunction with other medical evidence in the record, and reassess plaintiff's RFC.

Because this case is already being remanded for reevaluation of all the medical opinion evidence as well as plaintiff's RFC, it is unnecessary to determine whether the ALJ also erred in assessing Dr. Beard's July 2009 letter. On remand, the ALJ is also directed to reexamine the totality of Dr. Beard's opinions. In particular, the ALJ shall more thoroughly discuss whether plaintiff experiences pain while sitting.

      C.     <u>The ALJ May Have Erred in Making an Adverse Credibility Finding</u>

Credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record,

REPORT AND RECOMMENDATION - 14

and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination."). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Plaintiff argues that the ALJ's reasons for rejecting plaintiff's testimony, in particular her inability to sit for more than 15 minutes at a time, were not clear and convincing. Dkt. 11 at 17-18. Specifically, plaintiff argues that the ALJ cited the following reasons: (1) plaintiff's pain was treated with medication and stretching; (2) plaintiff was not considered for surgery until after the alleged onset date;[6] and (3) there were no complaints of pain while sitting in the medical record. *Id*. However, the Commissioner argues that "inconsistencies between plaintiff's testimony and Dr. Johnson's opinion, medical evidence documenting control of plaintiff's symptoms, the scarcity of complaints of difficulty sitting, and the absence of objective medical evidence corroborating the severity of [her] alleged symptoms" supports the ALJ's rejection of plaintiff's testimony. Dkt. 12 at 7.

The ALJ concluded that plaintiff was less than credible because her statements at the hearing concerning the intensity, persistence, and limiting effects of her symptoms were

---

[6] Dr. Manner scheduled plaintiff for surgery for the first time on August 25, 2006. AR at 294. This occurred after plaintiff's amended alleged onset date of December 15, 2005.

inconsistent with the other objective medical evidence and the established RFC. AR at 76. The ALJ did not specifically assign any other reasons for discounting plaintiff's credibility.

As determined above, the ALJ failed to properly evaluate all of the medical evidence in the record. Because alleged inconsistencies in the medical evidence formed the foundation for the ALJ's adverse credibility finding, it must be reversed and remanded. On remand, the ALJ shall reevaluate plaintiff's testimony. If the ALJ finds plaintiff less than credible, the ALJ shall provide clear and convincing reasons to support his rejection of plaintiff's testimony.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with this Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 8th day of August, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge